229 So.2d 344

**STATE of Louisiana Through the DEPART-MENT OF HIGHWAYS,**

**v.**

**D & J REALTY COMPANY, Inc., et al.**

No. 49402.

Nov. 10, 1969.

Rehearing Denied Dec. 15, 1969.

Dissenting Opinion Dec. 18, 1969.

D. Ross Banister, Chester E. Martin, Johnie E. Branch, Jr., J. David McNeill, III, Baton Rouge, for plaintiff-applicant

Theus, Grisham, Davis, Leigh & Brown, Monroe, for defendant-appellee.

FOURNET, Chief Justice.

The State of Louisiana, through its Department of Highways, being unable to amicably secure two lots of a certain tract with improvements thereon under lease by the owner, D & J Realty Company, Inc. to S & S Realty Company, Inc., who subleased a portion thereof to Albert Thibeaux, needed for highway purposes, instituted this proceeding under the authorization contained in Section 19.1 of Article VI of the Constitution of 1921 and R.S. 48:441–48:460, depositing in the court's registry $95,324 as the full fair value of the property in full ownership as estimated by its experts for "the person or persons entitled thereto" in compensation for the taking, with reservations of the minerals thereunder in accordance with the provisions of R.S. 9:5806, as amended by Act 278 of 1958, in perpetuity, naming as defendants D & J Realty Co., Inc., S & S Realty Co., Inc., and Albert Thibeaux. Answering jointly, the defendants, D & J Realty Co., as owner, and S & S Realty Co., as lessee, claimed the amount deposited in the registry of the court was not adequate compensation for the property expropriated, which they asserted had a true market value as of the time of the taking of $114,903.10 and prayed for judgment accordingly. Defendant, Thibeaux, also answered praying that his sublease be recognized as being in full force and seeking judgment against the Department in the sum of $16,655.91. The matter is now before us on a writ of certiorari granted on the State's application, 253 La. 621, 218 So.2d 900, to review the judgment of the Court of Appeal for the Second Circuit amending and recasting the judgment of the lower court awarding the sum of $112,023 as the full fair value of the property of which $15,100 was to be deducted therefrom for the leasehold interest of Thibeaux by fixing the market value of the property taken exclusive of the leasehold interest at $104,312 and fixing the leasehold value at $15,100, ordering both to be paid by the State.[1]

According to the record the State of Louisiana, in conjunction with the federal

1. Following judgment in the trial court, plaintiff deposited the $16,708 in excess of the $95,324 previously deposited together with interest, and this was withdrawn by defendants.

government is presently engaged in the construction of a number of controlled access and divided superhighways running through the state, one being La-US By Pass (Monroe). The project provides for construction along new alignment beginning at a point on the northerly boundary of DeSiard Road near its junction with Cole Avenue, and extending along the proposed alignment of La-US 165, Sterlington Road, a distance of 0.314 miles. The property in question is included within the right of way required for said project.

The record further reflects that the property is situated in the City of Monroe and is a portion of a larger tract comprised of five lots consisting of 65,470 square feet of which approximately 46% or 29,967.7 square feet is being taken, measuring 135.47 feet fronting on DeSiard Street and 193.7 feet on Cole Ave. with the rear abutting an alley for a distance of 249.67 feet. The entire tract belonging to D & J Realty was encumbered by a lease on July 1, 1955 to S & S Realty at a monthly rental of $550, said lease to run through December 31, 1969. This lease provided that any additional buildings or improvement constructed on the premises would revert to the lessor at the expiration of the lease. In 1956 S & S Realty subleased a portion of the property to Thibeaux in consideration that he construct a brick building suitable for a restaurant at a cost of not less than $10,000 and operate the same, likewise containing the reversionary provisions and expiring December 31, 1969. S & S Realty utilized the remaining portion fronting on DeSiard Street for a service station. At the time of the taking 50 and ½ months remained unexpired under the lease.

The trial judge reviewed the testimony of the experts, whom he recognized as competent and reliable, and concluded that an averaging of the appraisals would result in a fair and equitable award to the landowner and arrived at a figure of $2.65 per square foot for the raw land. It was stipulated the improvements on the property taken, consisting mostly of the improvements placed thereon by Thibeaux, had a value of $24,900,[2] and the lower court awarded the owner $16,708 in addition to the $95,324 previously deposited in the registry of the court. From this sum $15,100 was ordered paid to Thibeaux as his leasehold interest. From this judgment the State appealed with D & J Realty answering the same asking for an increase in its award. Neither S & S Realty nor Thibeaux appealed or answered and are,

---

2. The improvements situated on the property taken consist of a single story concrete brick restaurant with awnings and canopy attached, two 5 ton air conditioning units, a concrete bunk house, 45 feet of redwood fencing, and 4,500 square feet of blacktop surfaced parking area, all constructed on the property by Thibeaux except the bunk house.

therefore, no longer parties participating in the litigation.

The State is contending here, as it did in the court of appeal in its application for rehearing, that it is not contesting the award of $104,312.00 for the property in full ownership but, relying upon the jurisprudence of the appellate courts of this state, that the court of appeal erred in making a separate and additional award to the subleasee. In other words, the State urges that the award for the value of the property in full ownership includes the rights of all parties having an interest thereto.

The defendant landowner maintains whatever leasehold advantage was enjoyed by the sublessee did not emanate from it but the S & S Realty Co., and it did not suffer a corresponding disadvantage and if charged with the leasehold advantage by having that amount deducted from the market value of the property it is not receiving the just and adequate compensation demanded by the Louisiana Constitution.[3]

As pointed out by the court of appeal, "On the issue of the source of payment for the leasehold interest the State and defendant have cited the same authorities differing only in their contentions relative to the proper application of these authorities to the facts in the case at bar." [4]

In resolving the issue the court followed the interpretation it had made in the case of State, Through Dept. of Highways v. Holmes, La.App., 209 So.2d 780, in which this court granted writs, 252 La. 472, 211 So.2d 332, and reversed the judgment of the court, 253 La. 1099, 221 So.2d 811. In other words, we did not agree with the court of appeal's appreciation of the rationale of the landmark case of this court, In re Morgan R.R. & S.S. Co., supra.

In our decision in the Holmes case we pointed out, "This court, in its landmark decision of In re Morgan, * * * established the rule that has been universally followed by the courts of this state in determining the rights of parties involved in expropriation proceedings where the real estate is encumbered with a lease, as is succintly expressed in the syllabus," and concluded, "It is apparent that under the rule laid down in the Morgan case that 'where the value of the property has been fixed * * * by reference to the rent stipulated, and not by reference to the actual present value of the lease * * * it would be inequitable to charge the owner with the difference between the stipulated

---

3. Article 1, Section 2, " * * * Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."

4. In re Morgan R.R. & S.S. Co., 32 La. Ann. 371; State v. Ferris, 227 La. 13, 78 So.2d 493; and State Through Dept. of Highways v. Cockerham, La.App., 182 So.2d 786.

rent and the actual value of the lease,' applies only when the appraisal of the property taken was made without consideration of the economic value of the lease when using the income approach."

■ The rationale of this rule is that where the owner of the land to be expropriated has encumbered his property with a lease, as the case at bar, a portion of which is sublet by its lessee to a third party, he is powerless to transfer to the expropriator any greater rights of ownership than he has at the time of the taking. Consequently, the State to acquire perfect ownership to the subject property must acquire the rights of all the parties concerned, but it does not necessarily follow these rights must be separately expropriated. When done jointly, as was done in this case, the State acquires the property in full ownership by paying its just and adequate compensation from which all parties having an interest in the property are paid according to their respective rights.

This was recognized by the court of appeal in its decision wherein they relied upon an analysis of the Morgan case given by the First Circuit Court of Appeal in the Cockerham case, supra, but obviously overlooked the significance of the pertinent part providing, "If the value of the owner's rights have been determined in reference to the contract rent, the expropriator owes the lessee for the value of his rights taken;

however, *if the value of the owner's rights have been fixed in reference to the economic rent, then the lessee's rights will be compensated for from the proceeds paid to the owner."* Or as otherwise stated in the same opinion, "Two separate and distinct sets of rights are being acquired in the taking. \* \* \* If there is a lease advantage, the expropriator must pay the value thereof to the lessee. *This amount is not owed by the owner to the lessee unless* \* \* \* *the value of the owner's property has been fixed in relation to the present actual value of the lease."* (Emphasis added.)

■ The argument of counsel for the landowner that "defendant-landowner had no contractual connection or association with the sublessee, Albert Thibeaux, that whatever rights Thibeaux had he acquired from S & S Realty Company, Inc., not from your defendant-landowner, and, therefore, that whatever leasehold advantage Thibeaux may have did not emanate from defendant-landowner," and, therefore, it should not be charged with Thibeaux's lease advantage, is not consistent with the facts of the case.

While the landowner was not a party to the contract of sublease by S & S Realty and Thibeaux, it nevertheless acquiesced therein by allowing Thibeaux to construct without opposition and accepting the benefits derived therefrom, i. e. the improve-

ments constructed on the premises which were included in the appraisal fixing the value of the property taken, the value of which, as shown hereinabove, was fixed by stipulation of all parties at $24,900.

As pointed out by the court of appeal, "The $15,100 placed on the 'leasehold advantage' was elicited on cross examination of one of the plaintiff's experts and this amount is uncontested by the sublessee or the State," but we cannot agree with the court of appeal's appreciation that this amount is to be paid by the State in addition to the value of the property expropriated which included the improvements placed thereon by the sublessee.

Our study of the record reveals in establishing the value of the property taken in full ownership the State introduced the testimony of two well qualified experts in the appraisal of property, Mr. W. Dean Carter and Mr. J. Wayne Medley; called as experts for the defendant landowner were Mr. E. A. Porter and Mr. Gilbert Faulk, all of whom the courts found to be competent and reliable. Both Mr. Carter and Mr. Porter pointed out that there are namely three accepted procedures in estimating the value of real estate, i. e., the cost approach, the market data approach and the income approach and both of these men, along with Mr. Medley, testified that they necessarily utilized both the market data approach and the income approach to establish their esti-

mates of the value of the land in full ownership, explaining the validity of each is tested by use of all three. The State's appraisers testified that ·while the market data approach was used to value the raw land, they each used the economic rent to estimate the value of the entire property in fee simple as though free and unencumbered, Mr. Medley pointing out, "The total amount of which I estimated as the value of the subject property would include all interest including that of Mr. Thibeaux." This testimony in all material aspects was corroborated by defendant's appraiser, Mr. Porter. The testimony of Mr. Faulk is of little, if any probative value on the issue before us as it was primarily in regard to comparable sales used in appraisement of the property.

For the reasons assigned the judgment of the court of appeal is annulled and set aside and the judgment of the district court is amended and recast to read as follows:

It is ordered, adjudged and decreed that the value of the property and property rights herein taken by the State of Louisiana, through the Department of Highways at the time of the expropriation thereof, was and is hereby fixed at the full sum of One Hundred Four Thousand, Three Hundred and Twelve and No/100 ($104,312.00) Dollars, of which Albert Thibeaux shall be paid the sum of Fifteen Thousand One Hundred and No/100 ($15,100.00) Dollars as compensation for the property rights

expropriated from him and the remainder thereof shall be paid to D & J Realty Company, Inc.

In all other respects the judgment of the district court is affirmed. All costs in the court of appeal and this court are to be paid by the defendant D & J Realty Company, Inc.

BARHAM, J., recused.

SANDERS, Justice (dissenting).

The property expropriated in the present case was leased by the owner, D & J Realty Company, Inc., to S & S Realty Co. The lessee subleased a portion of it to Albert Thibeaux.

The question is whether the sublessee's damages should be taken from the market value of the land awarded to the owner or paid by the Department of Highways, the expropriator.

To justify a deduction from the landowner's award, a lease advantage as to the whole of the expropriated leased property must be established by competent evidence. This is true because unless the basic lease results in a lease disadvantage to the owner, the lease produces no diminution in the value of the land. The owner is getting all the lease is worth, that is, the full economic rent. See State, Through Dept. of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1961).

In its answer the lessee, S & S Realty, claimed no lease advantage. No evidence in the record establishes a lease advantage or the inadequacy of the contract rent, based on current economic evaluations. Hence, there is no evidentiary basis for paying the sublessee's claim from the landowner's award of the market value of the land.

The decision in State, Through Department of Highways v. Holmes, 253 La. 1099, 221 So.2d 811 (1969) is inapposite. In that case, the court found from the evidence a lessee's advantage, reducing the market value of the property.

The rule adopted by the majority would permit a lessee, by means of subleases at a nominal rent, to siphon off the landowner's award for the market value of his property. Such a result is inequitable and deprives the owner of just compensation guaranteed by the Constitution of Louisiana. Art. I, Sect. 2, Louisiana Const.

The sublessee is of course entitled to compensation for its damages from the expropriating agency, the Department of Highways. Columbia Gulf Transmission Company v. Hoyt, 252 La. 921, 215 So.2d 114 (1968).

For the reasons assigned, I respectfully dissent.

SANDERS and SUMMERS, JJ., are of the opinion a rehearing should be granted.

·SUMMERS, Justice (dissenting).

In my opinion the value of the defendant's property was determined without reference to the actual value of the lease. The trial court's version of the evidence, I think, is the correct one. In his reasons for judgment the trial judge said:

> The appraisers all failed to take into account that the *property owners'* rights must also be assigned upon the economic rent if he is to pay to the leaseholder all of the amounts due to him.

> \*     \*     \*     \*     \*     \*

> It may well be that the D. & J. Realty lease also provides a leasehold advantage to the sub-lessee, Mr. Thibeaux, but this has not been considered or evaluated by the appraisers.

And again in the same opinion,

> The Court would make this final comment in order to rationalize its holding. Apparently in this case the lessee created a right or advantage in the sub-lessee which is worth money to the sub-lessee

and for which the sub-lessee must be compensated. The lessee, S & S Realty Company, was compensated for this right or advantage because it accrued to their interests on the property adjoining that taken. *This advantage, however, did not enure as a greater advantage to the land owner or improve the value of the property taken from the landowner.* The Court is firmly convinced that because of this Mr. Thibeaux has a right and advantage above and beyond the value of the realty and improvements as presented to the Court by the experts in this case. (Emphasis added.)

These findings, considered in the light of In re Morgan R.R. & S.S. Co., 32 La. Ann. 371 (1880); State v. Ferris, 227 La. 13, 78 So.2d 493 (1955) and State Through Department of Highways v. Cockerham, 182 So.2d 786 (La.App.1966), convince me that the majority erred and the lessee's compensation for loss of the lease advantage should be paid by the expropriator and not from the award made to the landowner.

I respectfully dissent.