483 So.2d 592 (1986)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT
v.
Lawrence J. JACOB, Olite Jacob, Glenn Jacob and William Jacob.
No. 85-OC-1716.
Supreme Court of Louisiana.
February 24, 1986.
Rehearing Denied April 10, 1986.
*593 L. Lane Roy, Marie Candice Hattan, Roy & Hattan, Lafayette, for applicant.
Ronald J. Bertrand, Lake Charles, Frederick J. Fuselier, William W. Irwin, Jr., Bernard L. Malone, Jr., Baton Rouge, for respondent.
BLANCHE, Justice.
The Jacobs Restaurant was opened by Lawrence J. Jacob and Olite C. Jacob, approximately fifty years ago. During all of that time the business operated on the Jacob's property at University and Cameron Streets in Lafayette, Louisiana. After many years of operating a successful restaurant, the Jacobs sold the business to Jacob's of Lafayette, Inc., a Louisiana corporation owned by the Jacob's sons, William and Glenn. The Jacobs retained ownership of the land, building and improvements, leasing them to Jacob's of Lafayette, Inc. by virtue of a written lease executed on March 1, 1982.
On May 23, 1984, the State of Louisiana, acting through the Department of Transportation & Development, filed an expropriation *594 proceeding against Lawrence and Olite Jacob under LSA-R.S. Title 48, expropriating a substantial portion of the land on which the restaurant is located (although not the land directly under the building itself). Mr. and Mrs. Jacob answered this suit, alleging that as a result of the expropriation they would suffer extensive losses in excess of the amount estimated by the State. During the course of the pre-trial preparation, experts hired by Mr. and Mrs. Jacob advised their clients that the business operating on the property would not withstand the impact of the expropriation and subsequent highway construction. Upon being apprised of the imminent destruction of their livelihood, the Jacob brothers intervened as lessees to assert a claim for the damages they might sustain as a result of the expropriation.
Prior to the trial on the merits, the state filed a peremptory exception of no right of action to the petition of intervention. The State asserted that because the lease was not recorded, intervenors had no right to assert their claim for damages. On January 18, 1985, a hearing was held on the peremptory exception. The trial court found that the lessees had no right to intervene because they had failed to record their lease. This decision was based on LSA-R.S. 9:2754-56 (the "Public Records Doctrine"), which entitles third parties to rely on the absence from the public records of those interests that are required to be recorded. See Redmann, The Louisiana Law of Recordation: Some Principles and Some Problems, 39 Tul.L.Rev. 491 (1965). We granted writs to review the correctness of that ruling. Department of Transportation & Development v. Jacob, 474 So.2d 940 (La.1985).
In the hearing below, the attorney for the State admitted that if the lease had been recorded the intervenors would be entitled to assert a cause of action for damages. This admission was well founded, because the courts of this State have long recognized a lessee's status under law to require compensation for expropriation of lease property. Department of Highways v. LeBlanc, 319 So.2d 817 (La.App. 1st Cir.1975); Department of Highways v. Hayward, 338 So.2d 1171 (La.App. 2nd Cir. 1976).
The right to compensation is based on Art. 1, § 4 of the Louisiana Constitution of 1974, which states:
Section 4. Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.

Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss. No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction. Personal effects, other than contraband, shall never be taken.
This Section shall not apply to appropriation of property necessary for levee and levee drainage purposes, (emphasis added).
The clear intent of the framers of this constitution was to expand the right to compensation to include not only the property owners, but also of other persons who have legal status to require compensation such as lessees. This intent can easily be gleaned from a reading of the transcripts made of the debates on the section. We note and approve the following summarization *595 of the framers intent regarding La. Const., Art. 1, § 4:
Reference to "payment to the owner or into court for his benefit" was not meant to restrict the class of persons who could claim compensation to "owners" in a technical property law sense. The purpose was to give citizens more rights, and the term, as stated by the author of the final compromise, "is intended to be used in its broadest sense, in other words, a leasehold interest in land is a property right as you and I well know, and there's been some trouble over that in the past." In fact, when one couples this intent with the requirement that compensation be to the full extent of one's loss, the purpose emerges of giving protection to a broader category of persons than was previously the case. It is also clear that by referring to property "taken or damaged" compensation must be given not only when ownership or a real right is taken, but also when property is damaged.
Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 18 (1974) (footnotes omitted).
In view of the jurisprudence and the clear intent of the founders, therefore, it is without question that the intervenors would have a right to compensation but for their failure to record their written lease. When put in the light of this legal certainty the question before us narrows to one simple issue. May the state take property from private citizens and thereafter deny compensation because those citizens failed to record the instrument that is the source of the property interest taken?
The words of our Constitution are clear, "... Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit...." La.Const., art. I, § 4 (1974). The State in its argument relies greatly on the public records doctrine, but that doctrine is not at issue here. The issue is simply whether the intervenor had property and whether the State has taken it from the intervenor without compensating him. To the extent that any statute might be applied to operate to this effect, it is operating in an unconstitutional manner.
Did the leasehold interest represent a compensable property interest? As discussed, supra, it has been held to represent such an interest when recorded. Non-recordation does not have the effect of denying the leasehold its status as property. As Judge Redmann observed, "... recordation does not purport to be and is not itself the source of rights. A recorded purchase from the legal owner transfers ownership to the purchaser, not because of the recordation, but because of the purchase..." Redmann, supra, 39 Tul.L.Rev. at 495. An illustration of this rule is that an unrecorded purchase from the owner has no effect as to third party purchasers, but a recorded purchase from one who is not the owner does not create any right of ownership at all.[1] The State has through its power of expropriation damaged the property interests of the intervenor. Therefore, the intervenor has a right to bring an action for compensation, and the trial court was in error in not recognizing that right.
In taking this position we are not alone. In Fritz v. Iowa State Highway Commission, 270 N.W.2d 835 (Ia.1978), the Iowa Supreme Court held that an oral lease was a property interest when taken through eminent domain. In In Re Opinion of the Justice's, 365 Mass. 681, 313 N.E.2d 561 (1974), the Justices of the Massachusetts Supreme Court found that a grantee under an unrecorded deed possessed a valuable property interest and was thus entitled to compensation in the event of a taking for *596 public purpose. Compare Claremont Terrace Homeowner's Ass'n. v. United States, 146 Cal.App.3d 398, 194 Cal.Rptr. 216 (1983), an unrecorded option to purchase is a property right. See also Matter of City of Shakopee, 295 N.W.2d 495 (Minn.1980), an unrecorded contract to purchase land is a compensable interest; Dept. of Highways v. Pate, 555 P.2d 1040 (Okla.1976), owners of unrecorded interests are permissible intervenor's; State v. New Jersey Zinc Co., 40 N.J. 560, 193 A.2d 244 (1963), unrecorded purchase agreement is a compensable property interest; State v. Dillon, 175 Neb. 350, 121 N.W.2d 798 (1963), allowed the holder of an oral lease to recover saying that, "any other rule would ... deny any right to recover by reason of a prohibition of evidence...." and see Rich v. Wylie, 84 Idaho 58, 367 P.2d 763 (1962); Schuster v. Pennsylvania Turnpike Commission, 395 Pa. 441, 149 A.2d 447 (1959); and Illinois Power Company v. Miller, 11 Ill.App.2d 296, 137 N.E.2d 78 (1956).
The public records doctrine is not totally without effect however. The state has a right to rely upon the public records in filing its suits, even if the lessee was a party who could properly intervene. Shreveport v. Kansas City, S. & G. Ry., 184 La. 473, 166 So. 471 (1936). They need only name those defendants whose interests appear in the public records.

DECREE
For the above reasons, we grant the relator's motion to intervene and remand to the trial court for further proceedings in accordance with law.
MOTION GRANTED; REMANDED FOR FURTHER PROCEEDINGS.
DIXON, C.J., dissents with reasons.
MARCUS, J., dissents and assigns reasons.
DIXON, Chief Justice (dissenting)
I respectfully dissent.
In an expropriation the state's title dates from the filing of the suit and the deposit of the estimated value. The lessee who failed to record his lease can look only to his lessor to protect his possession. This case should be decided under the provisions of R.S. 48:445 and R.S. 9:2721-2722.
MARCUS, Justice (dissenting).
Although I consider a lessee to be an "owner" of property under the second paragraph of La.Const. art. 1, § 4, I consider the public records doctrine to be a "reasonable statutory restriction" on the ownership and disposition of property under the first paragraph of La.Const. art. 1, § 4. Therefore, the constitutional requirement of payment of just compensation to the owner of property taken for public purposes does not affect an ownership interest not recorded. The non-recorded instrument affecting immovable property is null and void except between the parties. In other words, the state (a third party) has a right to rely on the public records doctrine. The state's title dates from the filing of the suit and the deposit of the estimated value. Hence, the un-recorded lessee does not have a right to bring an action for compensation against the state. The trial court correctly denied the intervention. Accordingly, I respectfully dissent.
NOTES
[1] The question is not before us today, but we distinguish this situation from one in which the state is a purchaser rather than an expropriator. Where the State uses its power to expropriate, which our civil code likens to a total destruction of the property, see LSA CC art. 2697, it is governed not by the rule of the civil law, but instead by the restrictions of the Constitution.